**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY COLLIER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14 C 2157** |
| | ) | |
| **CITY OF CHICAGO, JOHN FOERTSCH, HAYTHAM MOHAMMAD, MARTIN MURPHY, GREGORY SLOYAN, and KENNETH WOJTAN,** | ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Timothy Collier has sued the City of Chicago and five members of the Chicago Police Department's Area South Gun Team, John Foertsch, Haytham Mohammad, Martin Murphy, Gregory Sloyan, and Kenneth Wojtan. Collier asserts claims under 42 U.S.C. § 1983 for false arrest, conspiracy to commit false arrest, and violation of due process. He also asserts state law claims for malicious prosecution, civil conspiracy, and intentional infliction of emotional distress. Defendants have moved for summary judgment on all of Collier's claims. For the reasons stated below, the Court grants summary judgment in favor of all defendants on Collier's state law claim for intentional infliction of emotional distress but otherwise denies defendants' motion.

## Background

On March 28, 2012, defendants executed a search warrant at 149 W. 74th Street in Chicago, Illinois. The warrant was based on information from a "J. Doe," who had

provided the address and a physical description of a man residing at that address.[1]  The

J. Doe said that he "had been purchasing [cannabis] for months now from" the man.

Defs.' LR 56.1(a) Stmt., Ex. C (Foertsch Dep.) at 18.  The warrant authorized a search

of the apartment for cannabis.

Officer Foertsch was the first of the defendants to enter the apartment, though

two officers not named as defendants entered before him.  He says that he observed

Collier exiting the front bedroom and "running toward the back of the house."  *Id.* at 44.

Foertsch and several other officers caught Collier and detained him near the kitchen.

Collier told the officers that he did not live in the apartment and was there to conduct an

estimate for repair of water damage.  Foertsch says that Collier was not carrying any

tools with which to conduct an estimate.

Collier was the only person in the apartment when the officers first entered.

Shortly after Collier was detained, another individual, later identified as Mario England,

was brought to the apartment by two officers who were not members of the search

team.  England had been sitting in a car outside the apartment.  He was detained with

Collier.  Foertsch then used a police canine to search the apartment.  After this search

was completed, Sergeant Murphy took photographs of the apartment and directed the

other officers to begin a physical search.

The officers found evidence suggesting that the apartment was the site of a drug

operation.  In the front bedroom, Sergeant Sloyan found a silver handgun and a bag

containing 1.5 pounds of cannabis.  In the rear bedroom, Murphy found U.S. currency,

---

[1] The J. Doe also said that the man went by the nickname "O.G.," though there is
evidence that O.G. is a widely-used term rather than a nickname.  *See* Defs.' LR 56.1(a)
Stmt., Ex. J (Sanford Dep.) at 12-13.

plastic packaging material, and scales.

The officers also recovered evidence that, they claimed, established that Collier resided in the apartment. Officer Mohammad found keys to the apartment. Mohammad gave these keys to Murphy, who was keeping the evidence log, and told Murphy that the keys had been recovered from Collier's pants pocket. Foertsch and Wojtan found personal items belonging to Collier, specifically, mail, resumes, paystubs, driver's license, a voter registration card, a Social Security card, and tax returns. At Collier's criminal trial, they testified that these personal items were found on a table inside the residence. In the front bedroom, the officers also found shoes and clothing, which they said belonged to Collier.

After the search, the officers arrested Collier and transported him to the police station. They did not arrest England. At the station, four of the officers completed paperwork related to the arrest. Wojtan completed the vice case report and arrest report. Foertsch completed the supplementary report and signed the criminal complaint against Collier. Mohammad completed an inventory report for the keys. Sergeant Murphy reviewed and approved the arrest report, supplemental report, and criminal charges.

Collier's account of the arrest differs from that of the officers. As he tells it, his presence at the apartment when the officers executed the search warrant was a case of wrong place, wrong time. Collier testified that he is a self-employed handyman and that the actual resident of the apartment, Robert Sanford, had asked him to repair water damage in the bathroom. Sanford confirmed this during his deposition in this case. On the day in question, Collier says, he had gone to the apartment to inspect the damage

and develop an estimate for the work. Sanford was not present at the apartment when he arrived. Collier phoned Sanford, who then phoned England, his cousin, who was staying in the apartment and had a set of keys. Collier says that England unlocked the apartment and then returned to his car. Collier denies ever having possession of England's keys and, accordingly, says that Mohammad did not find the keys in his pants pocket.

Collier's account differs from that of the officers in other important respects. First, although Foertsch claims that he observed Collier exiting the front bedroom (where the cannabis and gun were found), Collier says he was never in that room. There was no need to enter that room, he explains, because the water damage was confined to the apartment's bathroom. Second, although Foertsch says that Collier was not carrying any tools with which to conduct an estimate, Collier testified that he was carrying a pen, pencil, notebook, and tape measure. He says that he intended to "measure the ceiling just to determine how much drywall [he was] going to need" and then "go to Home Depot to price it." Pl.'s LR 56.1(b) Stmt., Ex. A (Collier Dep.) at 41-42. Third, Collier says that his only belongings were located in his book bag, that he informed the officers of this fact, and that the officers found his personal papers in his book bag, not on a table in the apartment as they claimed. Lastly, Collier says that the shoes and clothing found in the apartment did not belong to him and, in fact, were much too big for him.

Collier also contends that the officers discovered exculpatory evidence that is omitted from their reports. First, he notes that Murphy photographed mail in the bedroom that was addressed to 149 W. 74th Street but did not list Collier as the recipient. This evidence was not inventoried. Second, Collier points out that none of

the personal items that supposedly established his residency list 149 W. 74th Street as his address. Rather, they list his address as 5437 S. Paulina or 6334 S. Rockwell.

Lastly, Collier questions whether the officers reasonably concluded that he matched the physical description of the man alleged to be selling cannabis at the apartment. The "J. Doe" who provided information for the warrant described the target as a black male, 44-50 years old, 5'08"-5'10" tall, and weighing 155-175 pounds, with a light complexion and black/gray wavy hair. Collier is indeed a black male with black/gray hair, but he is slightly younger, taller, and heavier than the description. Specifically, at the time of the arrest he was 43 years old, 5'11" tall, and 195 pounds. The officers stated in a supplemental report that Collier "matched exactly the description of the target of [the] search warrant." Defs.' LR 56.1(a) Stmt., Ex. M (Supplemental Arrest Report).[2]

In June 2013, after spending fifteen months in jail, Collier was acquitted after a bench trial. While Collier was awaiting trial, Sanford was arrested for cannabis possession following execution of another search warrant at the same apartment. Sanford pled guilty and was sentenced to two years in prison. Collier filed this suit in March 2014.

### Discussion

A party is entitled to summary judgment if it shows that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court views the evidence in the light most

---

[2] The officers list Collier's physical characteristics differently in the arrest report and supplemental report. In the arrest report, the officers say that Collier is 43 years old, 5'11" tall, and 205 pounds. In the supplemental report, by contrast, the officers say that Collier 43 years old, 5'10" tall, and 190 pounds.

favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## A. False arrest claim

Collier asserts a section 1983 claim for false arrest in violation of his rights under the Fourth Amendment. This claim requires him to prove that the defendants arrested him without probable cause. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). "A police officer has probable cause to arrest a person if, at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "The jury must determine the existence of probable cause if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them. Only if the underlying facts claimed to support probable cause are not in dispute may the court decide whether probable cause exists." *Id.* (internal quotation marks omitted). Defendants contend that all of the officers had probable cause to arrest Collier and that even if there wasn't probable cause, Mohammad, Wojtan, and Sloyan were not sufficiently involved in the arrest to be held liable.

### 1. Probable cause

Collier was charged with possession of a weapon by a felon and possession of

cannabis. Both statutes require knowing possession of the unlawful items. *See* 720 ILCS 5/24-1.1(a); 720 ILCS 550/4(e). To have probable cause to arrest Collier for a possession offense, defendants needed evidence "tending to show that [Collier] knew of the presence of the contraband and that it was in his immediate and exclusive possession." *People v. Juarbe*, 318 Ill. App. 3d 1040, 1054, 743 N.E.2d 607, 619 (2001). "Even where there is no physical possession, constructive possession may exist where there is an intent and capacity to maintain control and dominion over the contraband, and this may be proved by showing that the defendant controlled the premises where it was found." *Id.*; *see also People v. Bui*, 381 Ill. App. 3d 397, 419, 885 N.E.2d 506, 525-26 (2008) ("The necessary control over the premises may be proved by showing that defendant lived there."). Mere presence on the premises, without more, is insufficient to demonstrate constructive possession. *See People v. Blue*, 343 Ill. App. 3d 927, 939, 799 N.E.2d 804, 814 (2003); *cf. United States v. Irby*, 558 F.3d 651, 654 (7th Cir. 2009) ("Mere proximity to the drug, mere presence on the property where it is located, or mere association, without more, with the person who does control the drug or property on which it is found, is insufficient to support a finding of possession.").

The J. Doe did not identify Collier by name. Rather, he provided only an address and a physical description of a person who resided at that address. Collier was not in actual possession of either the cannabis or the gun when the officers entered the apartment. Rather, both were found in a dresser located in the front bedroom. Thus, in order to have probable cause to arrest Collier, the officers needed something that tied him to the unlawful items. Proof of residence is one way to show constructive

possession of contraband. During their search, the officers looked for such evidence. *See, e.g.*, Pl.'s LR 56.1(b) Stmt., Ex. G (Wojtan Dep.) at 16.

A reasonable jury could find that the defendants failed to recover evidence tying Collier to the contraband and, instead, manufactured probable cause. At this stage, the Court must view the evidence in the light most favorable to Collier and draw reasonable inferences in his favor. Viewed in this way, the evidence would permit a reasonable jury to find that defendants manufactured probable cause by planting evidence, falsely representing important details of the arrest, and ignoring exculpatory evidence.

To begin with, Mohammad represented that he found keys to the apartment in Collier's pants pocket. Collier testified, however, that he never had possession of England's keys. Although Sanford was not present during the search, his testimony provides support for Collier's version of events. Specifically, Sanford testified that he lived at 149 W. 74th Street during the date in question and that England, his cousin, was the only other person who resided at that address. He also testified that he had hired Collier to repair water damage in his bathroom, that he phoned England to let Collier into the apartment, and that Collier did not have keys to the apartment. The Court also notes that England was found outside the apartment in his car. Based on this evidence, a reasonable jury could find that Mohammad either planted the keys on Collier or simply fabricated a story about where the keys were found.

There is also evidence from which a reasonable jury could find that the officers falsely represented several important details of the arrest. The supplemental report says that the officers observed Collier "running out of [the] front bedroom." Defs.' LR 56.1(a) Stmt., Ex. M (Supplemental Report). Collier testified, however, that he was

8

never in the bedroom.  A reasonable jury could believe Collier and accordingly could find that the officers lied about this to create a nexus between Collier and the location in which the drugs were found.

Next, the arrest report, prepared by Wojtan, says that the officers uncovered "proof of residency."  *See* Defs.' LR 56.1(a) Stmt., Ex. L (Arrest Report).  The supplemental report, prepared by Foertsch, specifies that this "proof of residency" consisted of the following items:  "keys to the apartment that were recovered from [Collier's] pants pocket"; "clothing and shoes" belonging to Collier; and "a folder containing [Collier's] personal items."  *Id.*, Ex. M (Supplemental Report).  A reasonable jury could find that, given the facts and circumstances within the officers' knowledge, a person of ordinary caution would not find that these items tended to show Collier's residency.  First, as discussed above, Collier testified that England let him into the apartment and that he never had possession of England's keys.  Second, Collier testified that the shoes and clothing did not belong to him and, in fact, were much too big for him.  Third, the supplemental report leaves out important details about the personal items belonging to Collier.  Specifically, it fails to mention that all of the personal items—mail, resumes, paystubs, driver's license, voter registration card, Social Security card, and tax returns—list either 5437 S. Paulina or 6334 S. Rockwell, not 149 W. 74th Street, as his address.  It also fails to mention that the personal items were recovered from his book bag.

Collier also contends that defendants ignored exculpatory evidence.  Though an officer who has probable cause to arrest need not continue to investigate to uncover exculpatory evidence, *see, e.g.*, *Forman v. Richmond Police Department*, 104 F.3d 950,

962 (7th Cir. 1997), the determination of probable cause involves an examination of all the circumstances known to the officer at the time of the arrest, including exculpatory information. Murphy photographed mail that was addressed to 149 W. 74th Street but did not list Collier as the recipient. Thus, insofar as this mail tended to show that Collier did not reside at the dress, it was exculpatory. Yet, even though Murphy photographed this mail, it was neither inventoried nor mentioned in any of the officers' reports. Given the evidence showing that the officers manufactured probable cause, a reasonable jury could infer that the officers chose not to inventory this evidence because it undermined their basis for probable cause.

Lastly, the supplemental report says that Collier "matched exactly the description of the target of [the] search warrant." Defs.' LR 56.1(a) Stmt., Ex. M (Supplemental Report). This is not quite so. The J. Doe's description is of a black male, 44-50 years old, 5'08"-5'10" tall, 155-175 pounds, with a light complexion, and black/gray wavy hair. The parties agree that as of the relevant date, Collier was 43 years old but was 5'11" tall and weighed 195 pounds. *See* Pl.'s Resp. to Defs.' LR 56.1 Stmt. ¶¶ 47-49. And though the parties also agree that Collier had some gray hair, they dispute whether his hair was wavy (Collier says that he "always had a short hairstyle, as opposed to wavy."). *Id.* ¶¶ 50-51.

Even with these discrepancies, however, Collier's age, height, and weight are relatively close to the J. Doe's description. That might cause a reasonable officer, when first seeing Collier, to believe he was the target of the warrant. But "[t]he continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause." *BeVier v. Hucal*, 806 F.2d 123, 128 (7th

Cir. 1986). Given the arguable generality of the physical description (it basically describes an average male in his 40s, and it includes no distinctive characteristics, such as a scar or tattoo), a reasonable jury could find that the evidence indicating that Collier was not a resident dissipated whatever inference of probable cause the officers might have drawn from Collier's physical appearance. Accordingly, a reasonable jury could find that an officer of ordinary caution would not have concluded that Collier was the target based on a comparison with the physical description given by J. Doe.

Defendants contend that witness identification alone is sufficient for probable cause, even if the witness's description deviates from the suspect's actual physical characteristics. In both of the cases cited by defendants, however, the witness positively identified the suspect prior to the arrest. *See Woods v. City of Chicago*, 234 F.3d 979, 983 (7th Cir. 2000) (victim signed criminal complaint against suspect before arrest); *Tangwall v. Stuckey*, 135 F.3d 510, 516 (7th Cir. 1998) (victim observed suspect in restaurant, called police, and positively identified suspect when police arrived). Here, by contrast, the J. Doe did not identify Collier specifically; he provided a vague and generic description of the target. *Woods* and *Tangwall* are therefore inapposite. In any event, a reasonable jury could find the arguable near match to the J. Doe's general description insufficient in light of the other evidence the officers had that tended to show that Collier did not live at the apartment, as well as the officers' claimed concealment and falsification of evidence.

In summary, the Court concludes that the underlying facts claimed to support probable cause are genuinely in dispute. *See Gonzalez*, 578 F.3d at 537. The jury must therefore determine whether the defendants had probable cause to arrest Collier.

### 2.    Personal involvement of Wojtan, Mohammad, and Sloyan in arrest

Defendants also argue that Wojtan, Mohammad, and Sloyan are entitled to summary judgment on the false arrest claim because Collier "cannot establish the requisite personal involvement required."  Defs.' Mem. in Supp. of Summ. J. at 4.  An individual can be liable in a section 1983 action only if "he caused or participated in an alleged constitutional deprivation."  *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012).  Although an officer who "merely performed a ministerial act" cannot be held liable under section 1983 for false arrest, the officer need not personally place the handcuffs on an arrestee to be subject to a claim for false arrest.  *Jenkins v. Keating*, 147 F.3d 577, 583-84 (7th Cir. 1998).  Rather, the Seventh Circuit has allowed for the possibility of holding multiple officers liable for a false arrest, albeit noting that a non-arresting officer "would have had to have undertaken some action prior to, or perhaps at the time of, [the arresting officer's] order to arrest . . . in order to have 'caused' or 'participated' in it."  *Id*.

The Court begins with Wojtan and Mohammad.  Viewing the evidence in the light most favorable to Collier, the evidence tends to show that Mohammad either planted the keys or fabricated a story about where they were found.  Wojtan, for his part, prepared the arrest report, which included the allegedly false assertion that the officers had recovered proof of residency.  Additionally, both officers were on the scene and participated in the arrest.  Based on these facts, a reasonable jury could find that both officers caused or participated in the alleged false arrest.

Sergeant Sloyan was one of two supervisors on the scene.  A supervisor "satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge

and consent.  That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye."  *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003).  Given Sloyan's presence throughout the search, the fact that he recovered the gun and cannabis, and the large number of alleged fabrications that went unreported, a reasonable jury could infer that he condoned or turned a blind eye to the officers' unlawful conduct.

For the reasons stated above, a reasonable jury could find that the officers lacked probable cause to arrest Collier, and that Mohammad, Wojtan, and Sloyan were sufficiently involved in the arrest to be held liable.  Defendants are not entitled to summary judgment on the false arrest claim on these bases.

## B.    Due process claim

Collier argues that defendants violated the Due Process Clause of the Fourteenth Amendment by fabricating evidence and withholding exculpatory evidence. In response, defendants contend that Collier's due process claim "fails because it is nothing more than a false arrest claim and a malicious prosecution claim recast as a due process claim."  Defs.' Reply in Supp. of Mot. for Summ. J. at 9.

For a time, it was believed that fabrication of evidence did not give rise a cognizable due process claim in the Seventh Circuit.  *See, e.g.*, *Saunders-El v. Rohde*, 778 F.3d 556, 560 (7th Cir. 2015) (noting that past Seventh Circuit decisions "may have rendered the law in this area uncertain"); *Bianchi v. McQueen*, No. 12 C 364, 2014 WL 700628, at *9 (N.D. Ill. Feb. 24, 2014) ("Until recently, it seemed to be settled law in the Seventh Circuit that allegations of evidence fabrication do not state a cognizable due process claim."); *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 926 (N.D. Ill. 2013)

("This opinion need not discuss the evidentiary support for [the plaintiff's] claim of evidence fabrication because that theory is not cognizable in this Circuit.").  More recently, however, the Seventh Circuit has put that view to rest.  As the law now stands in the Seventh Circuit, "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way."  *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012); *see also Saunders-El*, 778 F.3d at 560 (observing that if "a police officer . . . manufactures false evidence" and "that evidence is later used to deprive [a person] of [his] liberty in some way," that person may bring a due process claim under section 1983); *Armstrong v. Daily*, 786 F.3d 529 (7th Cir. 2015) (observing that a due process claim may lie when "a law enforcement official [ ] acts in bad faith to undermine the reliability of a trial, such as by manufacturing false evidence, arranging for perjured testimony, or destroying exculpatory evidence").

That is not to say that "every act of evidence fabrication offends one's due process rights."  *Saunders-El*, 778 F.3d at 560.  To sustain a due process claim based on fabricated evidence, the plaintiff must have been deprived of his liberty in some way, and the Seventh Circuit has said that a plaintiff who was "released on bond following his arrest and acquitted at trial . . . cannot make out an evidence fabrication-based due process violation."  *Id.* at 561.  If the plaintiff is not released on bond, however, his pretrial detention may satisfy this requirement even if he is ultimately acquitted.  *See Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000) ("The liberty deprivation is the eight months he was confined, from his bail revocation (after his arrest) to his acquittal, and the due process violation is the manufacture of false evidence."); *see also Saunders-El*,

778 F.3d at 561 (citing *Zahrey*'s discussion of liberty deprivation with approval); *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012) (same).

Collier contends that the defendants fabricated evidence by planting the keys and submitting police reports they knew to be false. Such conduct satisfies the Seventh Circuit's definition of fabrication of evidence. *See Petty v. City of Chicago*, 754 F.3d 416, 422-23 (7th Cir. 2014) (observing that [t]he hallmark of a fabrication case" is that the "the police or prosecutor manufactures evidence that he knows to be false"). Collier has also offered evidence from which a reasonable jury could find that the fabricated evidence resulted in a liberty deprivation. Specifically, he was in custody for 15 months while awaiting trial, and the evidence would permit a reasonable jury to find that absent the allegedly fabricated evidence, he would not have been charged and thus would not have suffered a deprivation of his liberty. The Court therefore denies defendants' request for summary judgment on the fabricated evidence due process claim.

Collier also contends that defendants violated due process by "deliberately exclud[ing] evidence implicating other suspects and exculpating [him]." Pl.'s Resp. to Defs.' Mot. for Summ. J. at 9. His brief is less than crystal clear on this point, but he appears to be referring to the fact that the police reports do not mention that his personal items indicated that he resided at an address other than 149 W. 74th Street and that there was mail found in the apartment that was addressed to 149 W. 74th Street but did not list Collier as the recipient.

The Court understands this to involve a contention that defendants violated

Collier's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963).[3] Although the Seventh Circuit has repeatedly expressed doubt "that an acquitted defendant can ever establish the requisite prejudice for a *Brady* violation," it has not entirely foreclosed a claim in this scenario. *See Saunders-El*, 778 F.3d at 562. Specifically, the Seventh Circuit has "entertained the possibility that prejudice could be established if an acquitted defendant showed that disclosure of the suppressed evidence would have altered the decision to go to trial." *Alexander*, 692 F.3d at 556. But defendants did not advance any argument in their summary judgment brief about the effect of this evidence on the decision to try Collier. Rather, they argued only that Collier's acquittal, without more, undermines a *Brady* claim. Because that appears to be an overstatement of the law as it now stands, and because defendants have made no effort to show the absence of effect of the suppressed evidence on the decision to try Collier, they are not entitled to pare the *Brady* allegations from Collier's due process claim on this basis.

## C.     Qualified immunity

Defendants argue that the doctrine of qualified immunity bars Collier's false arrest and due process claims. Qualified immunity shields government officials from liability for damages under section 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013). To determine whether a government official is entitled to qualified immunity, the Court asks

---

[3] The Court does not mean by this to suggest that the alleged concealment of evidence is a separate due process claim. Collier has advanced a single due process claim, involving both fabrication of inculpatory evidence and concealment of exculpatory evidence. The claim will be addressed at trial as a single claim, not two separate claims.

"(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Id.*

### 1. False arrest claim

A police officer "is entitled to qualified immunity in a false-arrest case when, if there is no probable cause, a reasonable officer could have mistakenly believed that probable cause existed." *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012) (internal quotation marks omitted). Here, Collier's evidence shows not only that defendants arrested him without probable cause, but that they actively manufactured probable cause by planting evidence, lying in police reports, and ignoring exculpatory evidence. Under these circumstances, no reasonable officer could have mistakenly believed that probable cause existed. Additionally, this right was clearly established on March 28, 2012, when the alleged false arrest occurred. *See, e.g.*, *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (reciting elements of false arrest claim). The Court thus denies defendants qualified immunity on the false arrest claim.

### 2. Due process claim

Although defendants argue generally that they "are entitled to qualified immunity of plaintiff's constitutional claims," they do not specifically discuss Collier's due process claim. They have forfeited this point.

Even without forfeiture, defendants would not be entitled to qualified immunity on this claim: fabrication of evidence constitutes a violation of due process, and this right was clearly established by March 28, 2012. *See Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012) (observing that the Seventh Circuit has "consistently held that a

police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way"); *id.* at 585-86 (holding that deliberate manufacture of false evidence was a clearly established due process claim before 1987).

## D. Malicious prosecution

Defendants also seek summary judgment on Collier's state law claim for malicious prosecution. In Illinois, the elements of a malicious prosecution claim are (1) commencement of criminal proceedings by the defendants, (2) termination of that matter in favor of the plaintiff, (3) the absence of probable cause for the proceedings, (4) the presence of malice, and (5) resulting damages. *See Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013). Criminal proceedings may be commenced "by the filing of a complaint, an indictment, or an information." *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) (citing 725 ILCS 5/111-1).

Defendants first contend that Collier's malicious prosecution claim fails because the officers had probable cause to arrest Collier. As with the false arrest claim, however, a reasonable jury could find that the officers lacked probable cause to arrest Collier.

Defendants mention in passing that there is no evidence of malice. But malice may be inferred from lack of probable cause when "there is no other credible evidence which refutes that inference." *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 77, 791 N.E.2d 1206, 1223 (2003). Defendants have not pointed to any other evidence that would refute this inference. In any event, if a jury found that the defendants fabricated evidence, lied in their post-arrest reports, and ignored exculpatory evidence, it

reasonably could find the absence of probable cause and malice.

Defendants also argue that there was "insufficient post-arrest conduct" by Sloyan, Murphy, Wojtan, and Mohammad to hold them liable for malicious prosecution. In Illinois, "[l]iability for malicious criminal prosecution is not confined to situations where the defendant signed a complaint against the plaintiff." *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 348, 733 N.E.2d 835, 842 (2000); *see also Logan*, 245 F.3d at 922 ("[I]n order to commence or continue a criminal proceeding, the defendant must have initiated the criminal proceeding or his participation in it must have been of so active and positive a character as to amount to advice and cooperation."). "Rather, liability extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present." *Id.* at 348-49, 733 N.E.2d at 842.

A reasonable jury could find that Murphy, Wojtan, and Mohammad played a sufficiently significant role in causing the prosecution of Collier to subject them to liability for malicious prosecution. Wojtan completed the case report and arrest report; Murphy reviewed and approved the arrest report, supplemental report (which contained numerous allegedly false statements about the arrest), and charges. These reports, Collier contends, contained knowingly false statements about important details of the arrest, including that the officers had recovered proof that Collier resided at 149 W. 74th Street. *See Jones v. City of Chicago*, 856 F.2d 985, 993-94 (7th Cir. 1988) ("[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the

decision. . . . [The defendants] cannot hide behind the officials whom they have defrauded."); *Allen v. Berger*, 336 Ill. App. 3d 675, 678, 784 N.E.2d 367, 370 (2002) ("[W]hen a person makes a knowingly false report to a prosecuting officer, the resulting prosecution is attributable to that person."). Mohammad, for his part, allegedly planted keys to the apartment on Collier. *See Buckley v. Fitzsimmons*, 20 F.3d 789, 796-97 (7th Cir. 1994) (observing that police officers who "bilk[] the prosecutor" by "fabricat[ing] evidence" are "liable for the injury their deceit caused"). These defendants are not entitled to summary judgment.

Sloyan did not prepare or approve the post-arrest reports, nor did he testify in the criminal proceedings. A reasonable jury could find, however, that Sloyan played a sufficiently significant role for purposes of a malicious prosecution claim by condoning or turning a blind eye the other officers' unlawful conduct during the search. "In constitutional-tort cases as in other cases, a man [is] responsible for the natural consequences of his actions." *Jones*, 856 F.2d at 993; *cf. id.* at 992-93 (concluding that supervisory officers could be held liable for malicious prosecution because "there was . . . enough evidence to enable the jury to infer that [they] had known every false step taken by the subordinate officers, had approved every false step, and had done their part to the make the scheme work"). Even if Sloyan's direct participation ended after the arrest, a reasonable jury could find he had the requisite knowledge that the fabricated evidence used to support the arrest was likely to be used to prosecute Collier. Sloyan is not entitled to summary judgment on the malicious prosecution claim.

### E.     Civil conspiracy

Collier advances two conspiracy claims. First, he contends that defendants

conspired to falsely arrest him in violation of section 1983.  Second, he argues that

defendants conspired to maliciously prosecute him in violation of Illinois law.

Defendants seek summary judgment on both of these claims.

### 1. Section 1983 civil conspiracy claim

Collier argues that the defendants conspired to falsely arrest him. The Seventh

Circuit has defined a civil conspiracy as "a combination of two or more persons acting in

concert to commit an unlawful act, or to commit a lawful act by unlawful means."

*Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).  To sustain a claim under

section 1983 for civil conspiracy, "the plaintiff must show that (1) the individuals reached

an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance

actually deprived him of those rights."  *Id.*

Defendants argue that Collier has "present[ed] no evidence of the existence of

any agreement . . . to deprive [him] of his constitutional rights."  Defs.' Mem. of Law in

Supp. of Summ. J. at 5.  It is true that Collier does not have direct evidence of an

agreement.  However, "[b]ecause conspiracies are often carried out clandestinely and

direct evidence is rarely available," the law allows plaintiffs to "use circumstantial

evidence to establish a conspiracy," as long as that evidence is not  "speculative."

*Beaman*, 776 F.3d at 511.  Thus, in some situations, a jury may reasonably infer that

the circumstances in which the alleged constitutional deprivation occurred could only

have arisen by means of conspiracy.  For instance, the Seventh Circuit recently

concluded that the "[r]eceipt of 24 bogus parking tickets from several officers in one

police department"—some of which indicated that plaintiff's car was parked in two

places at once—made it a "challenge to imagine a scenario in which that harassment

would not have been the product of a conspiracy." *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012).

The Court concludes that a reasonable inference of this sort may be drawn from the circumstances alleged by Collier. All five officers were present during the search. Collier contends that Foertsch, Mohammad, Murphy, and Wojtan assisted with manufacturing probable cause during the search by either planting evidence, falsely representing important details of the arrest, or ignoring exculpatory evidence. Sloyan, for his part, allegedly condoned or turned a blind eye to this behavior. Collier observes, furthermore, that Foertsch, Mohammad, Murphy, and Wojtan repeated these falsehoods in their reports and at trial, and that each report corroborated the other officers' allegedly false accounts of the arrest. If a jury found that each defendant had, in fact, acted in this way, it could also reasonably conclude that the defendants acted in concert. That is, absent a conspiracy, it would be a "challenge to imagine a scenario" in which each officer independently engaged in wrongdoing during the search that helped manufacture probable cause and then covered it up with later false testimony. *Geinosky*, 675 F.3d at 749.

Defendants also argue that they had probable cause to arrest Collier. As discussed above, however, a reasonable jury could find that the defendants lacked probable cause to arrest Collier. Collier is therefore entitled to a trial on his section 1983 civil conspiracy claim.

### 2.    State law civil conspiracy claim

In Illinois, "the elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an

unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317, 807 N.E.2d 461, 470 (2004). As with civil conspiracy claims under section 1983, Illinois courts acknowledge that "[a] conspiracy, by its very nature, is secretive" and that "the agreement is rarely susceptible to direct proof." *Reuter v. MasterCard Int'l, Inc.*, 397 Ill. App. 3d 915, 927-28, 921 N.E.2d 1205, 1216 (2010). Thus, Illinois courts permit a conspiracy to be established "from circumstantial evidence and inferences drawn from evidence, coupled with common-sense knowledge of the behavior of persons in similar circumstances." *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 66, 645 N.E.2d 888, 895 (1994). "The conspiracy may be inferred if parties pursue the same object by common means, one performing one part and another performing another part." *Rodgers*, 315 Ill. App. 3d at 350, 733 N.E.2d at 843.

Collier contends that defendants conspired to maliciously prosecute him. Defendants do not make any new arguments against the state law conspiracy claim. Instead, they repeat the two arguments they made against the section 1983 conspiracy claim: there is no evidence of an agreement, and the officers had probable cause. The Court's reasoning with regard to the section 1983 conspiracy claim applies with the same force here. The Court therefore denies summary judgment on this claim.

## F.     Intentional infliction of emotional distress claim

Defendants contend that Collier's intentional infliction of emotional distress claim is time-barred. In Illinois, "[t]he limitations period for tort claims, such as intentional infliction of emotional distress, against governmental entities and their employees . . . is only one year pursuant to 745 ILCS 10/8-101." *Evans v. City of Chicago*, 434 F.3d 916,

934 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). "[A] claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013).

Collier was arrested on March 28, 2012 and filed suit on March 27, 2014. He thus exceeded the one-year statute of limitations for tort claims against governmental entities and their employees. Accordingly, defendants are entitled to summary judgment on this claim.

## Conclusion

For the foregoing reasons, the Court partly grants and partly denies defendants' motion for summary judgment [dkt. no. 42]. All six defendants are entitled to summary judgment on the intentional infliction of emotional distress claim. The Court otherwise denies the motion for summary judgment. The case is set for a status hearing on September 15, 2015 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 26, 2015